**BRYAN CAVE LLP**
Andrea Hicks, California Bar No. 219836
Sean Fischer, California Bar No. 189287
Two Embarcadero Center, Suite 1410
San Francisco, CA 94111-3907
Telephone:     (415) 675-3400
Facsimile:      (415) 675-3434
E-Mail:          andrea.hicks@bryancave.com
                     fischers@bryancave.com

Stuart W. Price, California Bar No. 125918
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414
Telephone:     (949) 223-7000
Facsimile:      (949) 223-7100
E-Mail:          swprice@bryancave.com

Attorneys for Defendants
BANK OF AMERICA, N.A. (erroneously sued as "Bank of America Corporation," and
"Countrywide Home Loans Inc.,") and as successor by merger to BAC HOME LOANS
SERVICING, LP, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(erroneously sued as MERS, Inc.) and RECONTRUST COMPANY, N.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| TRUNG DO, | Case No. CV 11-01467 (JF) |
| Plaintiff, | [Assigned to Honorable Jeremy Fogel, Courtroom 3, 5th Floor, San Jose] |
| v. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| BANK OF AMERICA, COUNTRYWIDE HOME LOANS, INC., RECONTRUST COMPANY, N.A., AND DOES 1-100, | |
| Defendants. | [Filed concurrently with Notice of Motion and Motion to Dismiss Plaintiff's First Amended Complaint; [Proposed] Order] |
| | Date:          To Be Determined |
| | Time: |
| | Courtroom: |

SF01DOCS\39611.1

REQUEST FOR JUDICIAL NOTICE

BRYAN CAVE LLP
1900 MAIN STREET, SUITE 700
IRVINE, CALIFORNIA 92614

**TO PLAINTIFF TRUNG DO, IN PRO PER, AND THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE THAT** on _____ at _____ , or as soon after that as this matter can be heard, in Courtroom 3 of the above-captioned Court, located at 280 South 1st Street, San Jose, California 95113, Defendants BANK OF AMERICA, N.A., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and RECONTRUST COMPANY, N.A. (collectively, "Defendants") will, and hereby do, request that this Court, the Honorable Magistrate Judge Jeremy Fogel presiding, take judicial notice of the documents attached to this Request for Judicial Notice ("RJN") as Exhibits A through I.

Exhibit A:  InterestOnly$^{SM}$ Adjustable Rate Note, signed by Plaintiff and dated September 29, 2005.

Exhibit B:  Deed of Trust, signed by Plaintiff, dated September 29, 2005, and recorded in the official records of Santa Clara County as Document 18610204, on October 5, 2005.

Exhibit C:  Truth In Lending Disclosure Statement, dated September 29, 2005, and signed by Plaintiff on September 30, 2005.

Exhibit D:  Notice of Right to Cancel, dated September 29, 2005, and signed by Plaintiff on September 30, 2005.

Exhibit E:  Good Faith Estimate, dated September 29, 2005, and signed by Plaintiff on September 30, 2005.

Exhibit F:  Itemization of Amount Financed, dated September 29, 2005, and signed by Plaintiff on September 30, 2005.

Exhibit G:  Interest-Only Feature Disclosure, dated September 29, 2005, and signed by Plaintiff on September 30, 2005.

Exhibit H:  5-2-5 Cap Structure "Interest First/Interest Only" Fixed Period LIBOR ARMs, dated September 29, 2005, and signed by Plaintiff on September 30, 2005.

///

///

BRYAN CAVE LLP
1900 MAIN STREET, SUITE 700
IRVINE, CALIFORNIA 92614

1    Exhibit I:  Prepayment Penalty Option Disclosure, dated September 29, 2005, and signed by

2    Plaintiff on September 30, 2005.

3

4    Dated:  August 1, 2011                    **BRYAN CAVE LLP**
                                              Stuart W. Price
5                                             Andrea M. Hicks
                                              Sean Fischer
6

7

8    By:_____/s/ Sean Fischer_____
                                              Sean Fischer
9                                             Attorneys for Defendants
                                              BANK OF AMERICA, N.A.; MORTGAGE
10                                            ELECTRONIC REGISTRATION SYSTEMS, INC.
                                              and RECONTRUST COMPANY, N.A.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CA 94111-3907

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants request that the Court take judicial notice, pursuant to Federal Rule of Evidence 201, of the attached documents ("Exhibits"). Plaintiff references these Exhibits, none of which are attached, throughout his First Amended Complaint ("FAC").

In the Complaint, Plaintiff seeks various remedies, including rescission of the Note, declaratory relief, injunction, damages, and litigation costs, against Defendants for alleged improprieties in connection with a loan transaction.

Defendants request the Court to consider the attached Exhibits, because they are referenced in Plaintiff's FAC (*see, e.g.*, FAC ¶¶ 23, 34, 38, 40, 46, 51, and 52). Defendants also request that the Court take judicial notice of the attached Exhibits on the basis that they are central to the resolution of Plaintiff's FAC, bear Plaintiff's signature, and/or were recorded in the Santa Clara County Official Records.

Under Federal Rule of Evidence 201, a fact is judicially noticeable when it is not subject to reasonable dispute and is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Documents not physically attached to the Complaint may be considered by the Court on a Rule 12(b)(6) Motion if the Complaint refers to the documents, the documents are central to Plaintiff's claims, and there is no question concerning the authenticity of the documents. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). The Court's consideration of the attached loan documents does not convert Defendants' Rule 12(b)(6) Motion into a motion for summary judgment. *Id.*; Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial § 9:212.1b (2005).

The conditions for taking judicial notice of the Exhibits in connection with Defendants' Motion to Dismiss are met here: (1) they are referenced throughout the Complaint (*see, e.g.*, FAC ¶¶ 23, 34, 38, 40, 46, 51, and 52); (2) they are central to Plaintiff's claims, which are premised upon Plaintiff allegedly never signing or receiving these documents; (3) they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned; and (4) there is no material question concerning their authenticity as to either Plaintiff's signature or their recordation in the Santa Clara County Official Records.

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CA 94111-3907

1     For the foregoing reasons, Defendants respectfully request the Court take judicial notice of

2 the attached Exhibits.

3

4 Dated:  August 1, 2011                              **BRYAN CAVE LLP**
                                                     Stuart W. Price
5                                                    Andrea M. Hicks
                                                     Sean Fischer
6

7

8     By:_____/s/ Sean Fischer_____
                                                              Sean Fischer
9     Attorneys for Defendants
      BANK OF AMERICA, N.A.; MORTGAGE
      ELECTRONIC REGISTRATION SYSTEMS, INC.
10    and RECONTRUST COMPANY, N.A.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CA 94111-3907

# EXHIBIT A

Prepared by: JENNIFER ANDERSON



LOAN # TO BE INSERTED

CERTIFIED TO BE A TRUE AND CORRECT COPY

BY _____ CHICAGO TITLE INS. CO.

# InterestOnly<sup>SM</sup>  ADJUSTABLE RATE NOTE
(One-Year LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

SEPTEMBER 29, 2005                MORGAN HILL                CALIFORNIA
[Date]                            [City]                     [State]

5850 SCENIC MEADOW LANE, SAN JOSE, CA 95135
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 1,072,600.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  7.250  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will make a payment on the  first          day of every month, beginning on  DECEMBER 01, 2005
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on
 NOVEMBER 01, 2035     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
My monthly payment will be in the amount of U.S. $ 6,480.29        before the  First  Principal  and  Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)(d)                        Page 1 of 4                        Initials: _____



* 2 3 9 9 1 *

* 1 1 3 9 1 7 6 0 7 0 0 0 0 0 2 D 8 0 5 *

LOAN #: 113917607

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first             day of NOVEMBER, 2015  , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER             percentage points (      2.250  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than      12.250  % or less than      2.250  %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than      12.250  %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN             calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000  % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Initials: 

LOAN #: 113917607

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)   Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)   When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN #: 113917607

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
TRUNG DO                                         -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

*[Sign Original Only]*

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)                                    Page 4 of 4

# EXHIBIT B

**RECORDING REQUESTED BY:**
Chicago Title Company m H
32200500 Km
**AND WHEN RECORDED MAIL TO**
Countrywide Home Loans Inc
C/O MS SV-79 Document Processing
P.O. Box 10423
Van Nuys, CA 91410-0423

**Escrow No.:** 05-32200500-KM
**Locate No.:** CACTI7743-7743-3022-0032200500
**Title No.:** 05-32200500-TB

DOCUMENT: 18610204

Pages: 24

Fees       78 00
Taxes
Copies.
AMT PAID    78 00

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Chicago Title

RDE # 009
10/05/2005
8:00 AM

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Deed of Trust



**THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
(Additional recording fee applies)

(recoverch)(10-04)

3220000

Recording Requested By:
V. LOBUE


After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
JENNIFER ANDERSON

─────────────── [Space Above This Line For Recording Data] ───────────────

05-32200500                    00011391760709005
[Escrow/Closing #]                 [Doc ID #]

# DEED OF TRUST

MIN 1000157-0005428079-3


## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  SEPTEMBER 29, 2005 , together with all Riders to this document.
**(B) "Borrower"** is
TRUNG DO, AN UNMARRIED MAN


CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16                                              Initials: _TD_

-6A(CA) (0207)    CHL (09/02)(d)    VMP MORTGAGE FORMS - (800)521-7291        Form 3005 1/01
CONV/VA

* 2 3 9 9 1 *                    * 1 1 3 9 1 7 6 0 7 0 0 0 0 0 1 0 0 6 A *

DOC ID #: 00011391760709005

Borrower's address is
5850 SCENIC MEADOW LANE, SAN JOSE, CA 95135
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(D) "Trustee" is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 29, 2005 . The
Note states that Borrower owes Lender
ONE MILLION SEVENTY TWO THOUSAND SIX HUNDRED and 00/100

Dollars (U.S. $ 1,072,600.00     ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2035 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: 00011391760709005

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                          of                          SANTA CLARA                          :

[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 660-61-023                                    which currently has the address of

5850 SCENIC MEADOW LANE, SAN JOSE                          ,

[Street/City]

California      95135      ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)          CHL (09/02)                    Page 3 of 16

Initials: _____

Form 3005 1/01

DOC ID #: 00011391760709005

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: 00011391760709005

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: 00011391760709005

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: 00011391760709005

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 00011391760709005

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

-6A(CA) (0207)          CHL (09/02)                    Page 8 of 16                              Initials: _____

Form 3005  1/01

DOC ID #: 00011391760709005

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: 00011391760709005

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: 00011391760709005

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)          CHL (09/02)                 Page 11 of 16                    Initials: _____          Form 3005 1/01

DOC ID #: 00011391760709005

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Initials: _JM_

DOC ID #: 00011391760709005

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

DOC ID #: 00011391760709005

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC ID #: 00011391760709005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
TRUNG DO                                    -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

DOC ID #: 00011391760709005

State of California
County of  *Santa Clara*

On  9/30/05                before me,  *Kris S Blean*        personally appeared

*Trung Do*

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

KRIS S. BLEAN
Comm. # 1323520
NOTARY PUBLIC - CALIFORNIA
Santa Clara County
My Comm. Expires Sept. 30, 2005

Initials: _____      Form 3005  1/01

Prepared by: JENNIFER ANDERSON

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: 0001089
820 E. DUNNE AVENUE
MORGAN HILL, CA 95037
Phone: (408)778-8930
Br Fax No.: (408)778-6571

DATE:          09/29/2005
CASE #:
DOC ID #:    00011391760709005
BORROWER: TRUNG DO
PROPERTY ADDRESS: 5850 SCENIC MEADOW LANE
              SAN JOSE, CA 95135

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
● Legal Description Exhibit A
1C404-XX (04/03)(d)



*23991*

*1139176070000001006A*

**Escrow No.:** 05-32200500-KM
**Locate No.:** CACTI7743-7743-3022-0032200500
**Title No.:** 05-32200500-TB

# EXHIBIT "A"

All that certain Real Property in the City of San Jose, County of Santa Clara, State of California, described as follows:

All of Lot 19, as said Lot is shown upon that certain Map entitled, "Tract No. 8617... Being a portion of the Rancho Yerba Buena...", which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California on September 6, 1996 in Book 681 of Maps, at Pages 11, 12, 13, 14 and 15.

Excepting therefrom the underground water and rights thereto, without rights of surface entry, as granted to the City of San Jose by instrument recorded September 13, 1996 as Instrument No. 13445112, Official Records.

Assessor's Parcel Number:

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JENNIFER ANDERSON

Recording Requested By:

──────────────── [Space Above This Line For Recording Data]────────────────

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

| 05-32200500 | 00011391760709005 |
|---|---|
| [Escrow/Closing #] | [Doc ID #] |

CONV
* MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)(d)                    Page 1 of 5                    Initials: _____



* 2 3 9 9 1 *

* 1 1 3 9 1 7 6 0 7 0 0 0 0 1 U 7 9 6 *

DOC ID #: 00011391760709005

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTY-NINTH        day of
SEPTEMBER,  2005 , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

5850 SCENIC MEADOW LANE
SAN JOSE, CA 95135
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of        7.250 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first          day of NOVEMBER, 2015  , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."
   **(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
   **(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER             percentage points (     2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                    Page 2 of 5                    Initials: _____

DOC ID #: 00011391760709005

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                            Page 3 of 5                            Initials: _____

DOC ID #: 00011391760709005

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 4 of 5                    Initials: _____

DOC ID #: 00011391760709005

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
TRUNG DO                                -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 5 of 5

# EXHIBIT C

Prepared by: JENNIFER ANDERSON

# TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: COUNTRYWIDE HOME LOANS, INC.

☐ Preliminary ☒ Final
DATE 09/29/2005

4500 Park Granada
Calabasas, CA 91302-1613

BORROWERS: TRUNG DO

LOAN 113917607
CASE NO.
Type of Loan CONV UNINSURED
NonConf ARM LIBOR
10/1 EC IO

ADDRESS 5850 SCENIC MEADOW LN
CITY STATE / ZIP SAN JOSE, CA 95135-1674
PROPERTY 5850 SCENIC MEADOW LANE
SAN JOSE, CA 95135

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.047 % | $ 1,630,961.73 | $ 1,065,956.65 | $ 2,696,918.38 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 120 | 6,480.29 | MONTHLY BEGINNING 12/01/2005 |
| 239 | 7,997.02 | MONTHLY BEGINNING 12/01/2015 |
| 1 | 7,995.80 | LAST PAYMENT DUE 11/01/2035 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

DEMAND FEATURE: ☒ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☒ This loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at:
5850 SCENIC MEADOW LANE, SAN JOSE, CA 95135

ASSUMPTION: Someone buying this property ☐ cannot assume the remaining balance due under original mortgage terms
☒ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

PROPERTY INSURANCE: Hazard insurance, including flood insurance if the property is in a Special Flood Hazard Area, is required as a condition of this loan. You may obtain the insurance coverage from any insurance company acceptable to the lender. Complete details concerning insurance requirements will be provided prior to loan closing.

LATE CHARGES: If your payment is more than 15 days late, you will be charged a late charge of 5.000% of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
☒ may ☐ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

 09/30/05
BORROWER _____ DATE _____ BORROWER _____ DATE _____
TRUNG DO

BORROWER _____ DATE _____ BORROWER _____ DATE _____

FHA/VA/CONV
● Truth in Lending Disclosure
2C298-US (05/05)(d)

Page 1 of 2

Page 1 of 2

*23991*


*1139176070000002C298*

LOAN #: 113917607

## DEFINITION OF TRUTH-IN-LENDING TERMS

**ANNUAL PERCENTAGE RATE**

This is not the Note rate for which the borrower applied. The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge. Other charges which are used in calculation of the Annual Percentage Rate Charges are Private Mortgage Insurance or FHA Mortgage Insurance Premium (when applicable) and Prepaid Finance Charges (loan discount, origination fees, prepaid interest and other credit costs). The APR is calculated by spreading these charges over the life of the loan which results in a rate higher than the interest rate shown on your Mortgage/Deed of Trust Note. If interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same.

**PREPAID FINANCE CHARGES**

Prepaid Finance Charges are certain charges made in connection with the loan and which must be paid upon the close of the loan. These charges are defined by the Federal Reserve Board in Regulation Z and the charges must be paid by the borrower only, and not the seller if applicable. Non-inclusive examples of such charges are: Loan origination fee, "Points" or Discount, Private Mortgage Insurance or FHA Mortgage Insurance, Tax Service Fee. Some loan charges are specifically excluded from the Prepaid Finance Charge such as appraisal fees and credit report fees.

Prepaid Finance Charges are totaled and then subtracted from the Loan Amount (the face amount of the Deed of Trust/Mortgage Note). The net figure is the Amount Financed as explained below.

**FINANCE CHARGE**

The amount of interest, prepaid finance charge and certain insurance premiums (if any) which the borrower will be expected to pay over the life of the loan.

**AMOUNT FINANCED**

The Amount Financed is the loan amount applied for less the prepaid finance charges. Prepaid finance charges can be found on the Good Faith Estimate. For example if the borrower's note is for $100,000 and the Prepaid Finance Charges total $5,000, the Amount Financed would be $95,000. The Amount Financed is the figure on which the Annual Percentage Rate is based.

**TOTAL OF PAYMENTS**

This figure represents the total of all payments made toward principal, interest and mortgage insurance (if applicable).

**PAYMENT SCHEDULE**

The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable). These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller.

# EXHIBIT D

**RESCISSION - SAME LENDER**

**NOTICE OF RIGHT TO CANCEL**      **REFINANCE**

COUNTRYWIDE HOME LOANS, INC.

Prepared by: JENNIFER ANDERSON

DATE:        09/29/2005
BORROWER: TRUNG DO
CASE #:
LOAN #:    113917607
PROPERTY ADDRESS: 5850 SCENIC MEADOW LANE
                            SAN JOSE, CA 95135

Branch #: 0001089
820 E. DUNNE AVENUE
MORGAN HILL, CA 95037
Phone: (408) 778-8930
Br Fax No.: (408) 778-6571

## YOUR RIGHT TO CANCEL

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)  The date of this new transaction, which is _____ 9/30/05 _____ ; or
(2)  The date you received your new Truth In Lending disclosures; or
(3)  The date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address below.

If we do not take possession of the money within TWENTY CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this new transaction, you may do so by notifying us in writing, at:

COUNTRYWIDE HOME LOANS, INC.
820 E. DUNNE AVENUE
MORGAN HILL, CA 95037

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of 10/4/05 (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above).

If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

## I WISH TO CANCEL

_____          _____
CONSUMER'S SIGNATURE                                           DATE

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective as to all borrowers/owners.

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.



_____ 9/30/05        _____
BORROWER/OWNER                       DATE            BORROWER/OWNER                       DATE
TRUNG DO

_____            _____
BORROWER/OWNER                       DATE            BORROWER/OWNER                       DATE

(VMP)-62 (0002).04    CHL (04/03)(d)          VMP MORTGAGE FORMS - (800)521-7291                    2/00



# EXHIBIT E

LOAN #: 113917607    CASE #:
Lender: COUNTRYWIDE HOME LOANS, INC.

Prepared by: JENNIFER ANDERSON
## GOOD FAITH ESTIMATE
Sales Price: N/A
Base Loan Amount: 1,072,600.00
Total Loan Amount: 1,072,600.00
Type of Loan: CONV UNINSURED
Date Prepared: 09/29/2005

Address: 4500 Park Granada
Calabasas, CA 91302-1613

Applicant(s): TRUNG DO

Property Address: 5850 SCENIC MEADOW LANE
SAN JOSE, CA 95135

    The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

    The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Interest rate 7.250 %          Term of loan 30        Years

### 800 ITEMS PAYABLE IN CONNECTION WITH LOAN

| | | | |
|---|---|---|---|
| 801 | $ | | Loan Origination Fee    0.000 % |
| 802 | $ 0.00 | | Loan Discount    0.000 % |
| 803 | $ 894.00 | ** | Appraisal   – Paid To: Appraiser |
| 804 | $ 35.00 | ** | Credit Report   – Paid To: Credit Reporting Agency |
| 805 | $ 0.00 | | Lender's Inspection |
| 806 | $ 0.00 | | Mortgage Insurance Application Fee |
| 807 | $ 0.00 | | Assumption Fee |
| 808 | $ 0.00 | | Warehouse Fee |
| 809 | $ 290.00 | | Processing Fee |
| 810 | $ 60.00 | | Tax Service   – Paid To: Tax Service Provider |
| 811 | $ 26.00 | | Flood Check Fee   – Paid To: Flood Service Provider |
| 813 | $ 0.00 | | Wire Transfer |
| 814 | $ 0.00 | | Buydown Expense |
| 815 | $ 175.00 | | Document Preparation-Lender |
| 816 | $ 225.00 | | Underwriting Fee |
| 817 | $ | | |
| 818 | $ | | |
| 819 | $ | | |
| 820 | $ | | |
| 821 | $ | | |
| 822 | $ | | |
| 823 | $ | | |

### 900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE

| | | | |
|---|---|---|---|
| 901 | $ 5,752.35 | 27 Days Interest @ $ 213.05 /Day | |
| 902 | $ 0.00 | Conventional PMI/FHA Up-front MIP/VA Funding Fee | Financed $ _____ Paid Cash $ _____ |
| 903 | $ 0.00 | Hazard Insurance Premium | |
| 904· | $ 0.00 | | |
| 905 | $ | | |

### 1000 RESERVES DEPOSITED WITH LENDER

| | | | | |
|---|---|---|---|---|
| 1001 | $ 0.00 | Hazard Insurance | 3 Months @ $ 393.75 | /month |
| 1002 | $ 0.00 | Mortgage Insurance | 0 Months @ $ 0.00 | /month |
| 1003 | $ 0.00 | Taxes | 0 Months @ $ 1,406.33 | /month |
| 1004 | $ 0.00 | Taxes | 0 Months @ $ 0.00 | /month |
| 1005 | $ 0.00 | Taxes | 0 Months @ $ 0.00 | /month |
| 1006 | $ 0.00 | Flood Insurance | 0 Months @ $ 0.00 | /month |
| 1007 | $ 0.00 | Aggregate Analysis Adjustment | | |

### 1100 TITLE CHARGES

| | | |
|---|---|---|
| 1101 | $ 250.00 | Closing or Escrow Fee |
| 1102 | $ 0.00 | Abstract or Title Search |
| 1103 | $ 0.00 | Title Examination |
| 1104 | $ 0.00 | Title Insurance Binder |
| 1105 | $ 50.00 | Document Preparation |
| 1106 | $ 30.00 | Notary |
| 1107 | $ 0.00 | Attorney/Settlement Agent |
| 1108 | $ 1,630.20 | Title Insurance |
| 1109 | $ 75.00 | Title Insurance Endorsement |
| 1110 | $ 40.00 | Courier/Express Mail-Clsng |
| 1111 | $ | |

### 1200 GOVERNMENT RECORDING & TRANSFER CHARGES

| | | |
|---|---|---|
| 1201 | $ 125.00 | Recording Fees |
| 1202 | $ 0.00 | City/County Tax/Stamps |
| 1203 | $ 0.00 | State Tax/Stamps |
| 1204 | $ 0.00 | |

### 1300 ADDITIONAL SETTLEMENT CHARGES

| | | |
|---|---|---|
| 1301 | $ 0.00 | Survey |
| 1302 | $ 0.00 | Pest Inspection |
| 1303 | $ 0.00 | Well and Septic Tank Inspection Fee |
| 1304 | $ 0.00 | |

$ 9,657.55    TOTAL ESTIMATED BORROWER SETTLEMENT CHARGES
    "S" next to an item designates a cost to be paid by Seller (Not included in the total).
    "POC-L" next to an item designates a cost paid by the Lender (Not included in the total).
    "POC-B" next to an item designates a cost paid by the Borrower (Included in the total).

**Lender requires the use of a particular provider for this settlement service. See attached for additional information.

FHA/VA/CONV
● Good Faith Estimate
2C410-US (05/04)(d)

Page 1 of 2

Initials: 


*23991*

*113917607000002C410*

LOAN #: 113917607

**TOTAL ESTIMATED FUNDS NEEDED TO CLOSE:**

| | | |
|---|---|---|
| $ | N/A | Downpayment |
| $ | 3,905.20 | Estimated Closing Costs |
| $ | 5,752.35 | Estimated Prepaid Items/Reserves |
| $ | | Other |
| $ | | Financed PMI/MIP/VA Funding Fee |
| $ | 9,657.55 | TOTAL |

**TOTAL ESTIMATED MONTHLY PAYMENT**

| | | |
|---|---|---|
| $ | 6,480.29 | Initial Interest Only |
| $ | 1,406.33 | Taxes |
| $ | 393.75 | Hazard & Flood Insurance |
| $ | 0.00 | Mortgage Insurance |
| $ | 8,280.37 | TOTAL MONTHLY PAYMENT* |

These estimates of closing costs are provided pursuant to the Real Estate Settlement Procedures Act (RESPA). If your loan application is for a first lien residential mortgage and is made in a transaction to purchase a home, additional important information can be found in the HUD Special Information Booklet provided to you by your lender or mortgage broker.

**DISCLOSURES CONCERNING REQUIRED USE OF SETTLEMENT SERVICE PROVIDERS**

If an estimated charge shown on page 1 is identified with a double asterisk (**), the lender requires the use of a particular provider of that settlement service. The estimated charge shown is based on the charges of the designated provider. The relationship between the lender and the settlement service provider is that the lender has repeatedly used the provider's services in the past. The lender may decide to choose a different provider, the HUD-1 or HUD-1A statement given to you at settlement will disclose the provider used.

SEE ACCOMPANYING CONTROLLED BUSINESS ARRANGEMENT DISCLOSURE REGARDING THE RELATIONSHIP BETWEEN THE LENDER AND LANDSAFE APPRAISAL SERVICES, INC.

* * APPRAISER * *
The Lender will require an appraisal from an appraiser we select from our approved list.
* * CREDIT BUREAU * *
Landsafe Credit Services, Inc.
1515 Walnut Grove Ave, MSN = RM-162, Rosemead, CA 91770
1-800-475-9516
This company is an affiliate of the lender.

* Does not include Optional Insurance.

| | | | |
|---|---|---|---|
| _Trung Do signature_ | 09/30/2005 | | |
| Applicant | Date | Applicant | Date |
| TRUNG DO | | | |

| | | | |
|---|---|---|---|
| Applicant | Date | Applicant | Date |

FHA/VA/CONV
● Good Faith Estimate
2C410-US (05/04)

Page 2 of 2

Prepared by: JENNIFER ANDERSON

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: 0001089
820 E. DUNNE AVENUE
MORGAN HILL, CA 95037
Phone: (408)778-8930
Br Fax No.: (408)778-6571

DATE:          09/29/2005
BORROWER:   TRUNG DO
CASE #:
LOAN #:       113917607
PROPERTY ADDRESS: 5850 SCENIC MEADOW LANE
                 SAN JOSE, CA 95135

## ADDENDUM TO GOOD FAITH ESTIMATE

You have the right to freely select the person or organization rendering insurance services (as an agent, broker or underwriter), except insurance or a guarantee provided by a government agency or private mortgage insurance.

We do not require that any particular provider or affiliated group of providers be used to provide legal service, title examination services, title insurance policies, or settlement services. However, we do insist that the provider you select be approved by us. Our desire is to ensure that any providers of these services are reputable, knowledgable and possess the financial strength to support any claim against the title to property you are offering as security for this loan.

We are affiliated with LandSafe Title, a provider of title insurance and closing services. Under federal law, we may not require you to use the services of its affiliated companies. You are free to select the service provider that best suits your needs.

It is important that title insurance and settlement services be completed in a timely manner. Accordingly, as soon as you have signed a purchase agreement or have completed a mortgage loan application, you should choose a title insurer and closer. Please use the attached form to designate your title insurer and closer, so that we may verify approval.



_____  09/30/2005 ___     _____
Applicant                          Date        Applicant                          Date
TRUNG DO


_____  ___              _____
Applicant                          Date        Applicant                          Date

FHA/VA/CONV
® Good Faith Estimate LandSafe Addendum
2C607-XX (09/01)(d)

# EXHIBIT F

Prepared by: JENNIFER ANDERSON

**COUNTRYWIDE HOME LOANS, INC.**

DATE:            09/29/2005
BORROWER:   TRUNG DO
CASE #:
LOAN #:         113917607
PROPERTY ADDRESS: 5850 SCENIC MEADOW LANE
                             SAN JOSE, CA 95135

Branch #: 0001089
820 E. DUNNE AVENUE
MORGAN HILL, CA 95037
Phone: (408)778-8930
Br Fax No.: (408)778-6571

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1. | Loan Amount | 1,072,600.00 |
| 2. | Prepaid Finance Charges: | |
| | Origination Fee | 0.00 |
| | Discount Points | 0.00 |
| | Tax Service Fee | 60.00 |
| | Processing (Underwriting) | 290.00 |
| | Prepaid Interest ( 27 days) | 5,752.35 |
| | of % per annum | |
| | Mortgage Insurance Premium | 0.00 |
| | Mortgage Insurance Impounds | 0.00 |
| | Warehouse Fee | 0.00 |
| | VA Funding Fee | 0.00 |
| | FHA UFMIP | 0.00 |
| | Buydown | 0.00 |
| | Underwriting Fee | 225.00 |
| | Courier/Express Mail-Clsng | 40.00 |
| | Closing/Escrow | 250.00 |
| | Flood Check Fee | 26.00 |

| | | |
|---|---|---|
| | **TOTAL** | 6,643.35 |
| 3. | Amount Financed (1 minus 2) | 1,065,956.65 |

I/We hereby acknowledge reading and receiving a completed copy of this disclosure.



_____     9/30/05
Borrower                                Date
TRUNG DO

_____     _____
Borrower                                Date

_____     _____
Borrower                                Date

_____     _____
Borrower                                Date

FHA/VA/CONV
Itemization of Amount Financed - Reg Z
2C120-US (03/04)(d)



# EXHIBIT G

Prepared by: JENNIFER ANDERSON

**COUNTRYWIDE HOME LOANS, INC.**

DATE:      09/29/2005
BORROWER: TRUNG DO
CASE #:
LOAN #:     113917607
PROPERTY ADDRESS:  5850 SCENIC MEADOW LANE
                SAN JOSE, CA 95135

Branch #: 0001089
820 E. DUNNE AVENUE
MORGAN HILL, CA 95037
Phone: (408)778-8930
Br Fax No.: (408)778-6571

## INTEREST-ONLY FEATURE DISCLOSURE

This disclosure contains important information about your loan and the interest-only feature. You should read it carefully and keep a copy for your records.

You have applied for a loan that provides for monthly payments of interest-only during the first 10 years, followed by monthly payments of principal and interest for the remaining years of the loan. The interest-only feature on your loan provides you with the following benefits:

- Lower monthly payments during the first 10 years of your loan.
- Potential tax benefits from extra mortgage interest deductions on your loan. Ask your tax advisor for advice on tax implications for you.

During the interest-only period, the monthly payment will not reduce the principal balance that is outstanding on your loan. After the interest-only period, your monthly payment will be higher during the remaining 20 year term of the loan to cover principal and interest. Your Amortization Schedule shows the change in your monthly payment after the interest-only period. With the interest-only feature, you will pay more mortgage interest over the life of the loan than you would with a 30-year fixed rate mortgage.

If your loan includes mortgage insurance, the interest-only feature may delay the date on which you are eligible to cancel your mortgage insurance.

If you make a partial prepayment during the period when your monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term in which the payments consist only of interest. Prepayment amounts received by the 20th of the month will decrease the payment due the next month. Prepayment amounts received after the 20th will affect the payment due the second month following receipt of the prepayment.

If a partial prepayment is made during the period when your payments consist of principal and interest, the amount of your monthly payment will not decrease; however, the principal and the interest required under the Note will be paid prior to Maturity Date.

I acknowledge that I have read and understand the information about the interest-only feature and voluntarily elect this feature.



_____  09/30/2005
Applicant                Date

_____
Applicant                Date

_____
Applicant                Date

_____
Applicant                Date

CONV
- Interest-Only ARM Feature Disclosure
2D793-US (10/02)(d)



* 2 3 9 9 1 *           * 1 1 3 9 1 7 6 0 7 0 0 0 0 0 2 D 7 9 3 *

# EXHIBIT H

COUNTRYWIDE HOME LOANS, INC.

Prepared by: JENNIFER ANDERSON

DATE:        09/29/2005
BORROWER: TRUNG DO
CASE #:
LOAN #:      113917607
PROPERTY ADDRESS: 5850 SCENIC MEADOW LANE
                  SAN JOSE, CA 95135

Branch #: 0001089
820 E. DUNNE AVENUE
MORGAN HILL, CA 95037
Phone: (408)778-8930
Br Fax No.: (408)778-6571

### 5-2-5 CAP STRUCTURE "INTEREST FIRST/INTEREST ONLY" FIXED PERIOD LIBOR ARMS

This disclosure describes the features of an Adjustable Rate Mortgage (ARM) program you are considering. Information about our other ARM programs will be provided upon request.

#### HOW YOUR INTEREST RATE AND PAYMENT ARE DETERMINED

- After the first five, seven or ten years of your loan, as applicable, your interest rate will be based on an index rate plus a margin. Please ask us for our current interest rates and margins.
- The "index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.
- Your initial interest rate is not based on the index used to make later adjustments. If the initial interest rate is below the sum of the then-current index plus margin (the "fully indexed rate"), then the initial interest rate will be a "discounted" interest rate. If the initial interest rate is above the fully indexed rate, then it will be a "premium" interest rate. Please ask us for the amount of our current interest rate discounts and premiums.
- For the first five, seven or ten years of your loan, as applicable, your payment will be based on the interest rate, loan balance, and remaining loan term.

| | 5/1 ARM | 7/1 ARM | 10/1 ARM |
|---|---|---|---|
| | | **How Your Interest Rate Can Change** | |
| Your interest rate can change: | After 5 years and annually thereafter. | After 7 years and annually thereafter. | After 10 years and annually thereafter. |
| Each time your interest rate changes, the new interest rate will equal the sum of the margin, subject to the following limits: | • Your interest rate will be rounded to the nearest 1/8%.<br>• On the first change date, your interest rate can increase or decrease by 5.0%.<br>• On each subsequent change date, your interest rate will not increase by more than 2.0%.<br>• Your interest rate will not increase by more than 5.0% over the life of your loan. | • Your interest rate will be rounded to the nearest 1/8%.<br>• Your interest rate will not increase by more than 5.0% over the life of your loan.<br>• On the first change date, your interest rate can increase or decrease by 5.0%.<br>• On each subsequent change date, your interest rate will not increase by more than 2%. | • Your interest rate will be rounded to the nearest 1/8%.<br>• Your interest rate will not increase by more than 5% over the life of your loan.<br>• On the first change date, your interest rate can increase or decrease by 5.0%.<br>• On each subsequent change date, your interest rate will not increase by more than 2%. |
| | | **How Your Payment Can Change** | |
| Your monthly payments will cover interest only: | For the first 5 years of your loan. | For the first 7 years of your loan. | For the first 10 years of your loan. |
| If you make voluntary principal payments during the interest only period: | Your required interest only payment will be reduced to reflect the decrease in your loan amount. | | |
| Your monthly payments can change: | Each time the interest rate changes and can increase or decrease substantially based on the changes in the interest rate. | | |
| For the first 5, 7 or 10 years of your loan, as applicable, your regular monthly payments will not reduce your loan balance. After this initial interest-only period, your monthly payments will begin to reduce your loan balance. This means that your payments could increase substantially when the interest-only period ends, even if your interest rate stays the same or goes down. | | | |
| You will be notified in writing: | At least 25, but no more than 120 days, before the due date of a payment at a new level. This notice will contain information about the index, your interest rates, payment amount, and loan balance. | | |
| | The examples below illustrate interest rate and payment changes based on a $10,000, 30-year loan using an initial interest rate in effect on the first business day of January, 2005 and assuming the maximum periodic increase in rates and payments. | | |
| | | *Examples of loans with a discounted interest rate (below sum of index and margin)* | |
| Initial Interest Rate | Not Available % | 5.250 % | 5.125 % |
| Maximum Interest Rate | Not Available % | 10.250 % | 10.125 % |
| First Year Payment | $ Not Available | $ 43.75 | $ 42.71 |
| Maximum payment | $ Not Available in the 6th year | $ 94.45 in the 8th year | $ 97.33 in the 11th year |
| | | *Examples of loans with a premium interest rate (below sum of index and margin)* | |
| Initial Interest Rate | 5.875 % | 6.125 % | 6.000 % |
| Maximum Interest Rate | 10.875 % | 11.125 % | 11.000 % |
| First Year Payment | $ 48.96 | $ 51.04 | $ 50.00 |
| Maximum payment | $ 97.11 in the 6th year | $ 100.59 in the 8th year | $ 103.22 in the 11th year |

Note: To see what your payment would be, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. For example, the monthly payment for a $60,000 5/1 ARM with a premium interest rate would be: $60,000 / $10,000 = 6; 6 × $ 48.96   = $293.76



| | | |
|---|---|---|
| TRUNG DO Applicant | 09/30/2005 Date | Date |
| | | |
| Applicant | Date | Applicant |
| | | |
| Applicant | | Applicant |

Conv
● Program Disclosure - Interest First/Interest Only Fixed LIBOR ARM
2D806-US (06/05)(d)

* 2 3 9 9 1 *

* 1 1 3 9 1 7 6 0 7 0 0 0 0 0 2 D 8 0 6 *

# EXHIBIT I

Prepared by: J. ANDERSON

**COUNTRYWIDE HOME LOANS, INC.**
BRANCH #0001089
820 E. DUNNE AVENUE
MORGAN HILL, CA 95037-
(408)778-8930
Br Fax No.: (408)778-6571

DATE:      09/29/2005
BORROWER: TRUNG DO
CASE #:
LOAN #:      113917607
PROPERTY ADDRESS: 5850 SCENIC MEADOW LANE
                 SAN JOSE, CA 95135

## PREPAYMENT PENALTY OPTION DISCLOSURE

Original Principal Balance: $ 1,072,600.00

|  | Loan Program Without Prepayment Penalty Option | Loan Program With Prepayment Penalty Option | Savings |
|---|---|---|---|
| Interest Rate | 7.250      % | 7.250      % | 0.000      % |
| Monthly Payment | $7,317.02 | $6,480.29 | $836.73 |
| Points | 0.625      % | 0.000      % | 0.625      % |

I understand that my loan has a prepayment penalty for the first one year of the loan. I also understand that I have the option of choosing a different loan program without a prepayment penalty.

I have chosen a loan program with a prepayment penalty, and understand the terms and conditions of the loan I have chosen and that there is a rate and/or points savings to me for taking the loan with a prepayment penalty.

If I prepay my loan, I will pay a prepayment penalty in accordance with the terms of the Note, including any addendum to the Note.

_____          09/30/2005
Applicant  TRUNG DO                                      Date

_____          _____
Applicant                                                Date

_____          _____
Applicant                                                Date

_____          _____
Applicant                                                Date

CONV
● Prepayment Penalty Option Disclosure
2C9941US (11/04)



